IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| ANNE HARTE,<br>      Plaintiff,<br><br>vs.<br><br>CANNON LAW ASSOCIATES,<br>      Defendant. | **ORDER**<br><br><br>Case No. 2:13-CV-174-TC |

  Plaintiff Anne Harte brought this action alleging that Defendant Cannon Law Associates (Cannon) violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, when it contacted Ms. Harte on behalf of its client, American Express Bank, FSB, (Amex) in an effort to collect a debt that Ms. Harte owed Amex.  Cannon has now filed a motion for summary judgment claiming that Ms. Harte has "released all claims against [Cannon] arising from [Cannon's] debt collection activities in exchange for more than $10,000 in consideration in the form of debt relief." **(**Def.'s Mot. For Summ. J. 2, Dkt. No. 15**.)**  The court agrees with Cannon and therefore grants its Motion for Summary Judgment (Dkt. No. 15).

BACKGROUND

  Cannon is a law firm with a practice primarily focused on debt collection.  Amex retained Cannon as its attorney to assist in collecting a debt Ms. Harte owed Amex.  According to Ms. Harte's complaint, Cannon attempted to contact Ms. Harte by phone to collect the debt. On March 11, 2013, Ms. Harte filed a complaint against Cannon in this court alleging that the phone call violated the FDCPA because Cannon failed to properly disclose that the contact was for the purpose of collecting a debt and that Cannon was a debt collector.  After Ms. Harte had

filed its federal complaint against Cannon, Cannon filed a complaint against Ms. Harte on behalf of Amex in Utah state court (the state court action).

In May 2013, Ms. Harte and Amex entered into a settlement agreement in the state court action. The release reads, in part:

> . . . each Party to this Agreement, for and on behalf of itself, and its predecessors, successors, assigns, heirs, executors, trustees, beneficiaries, and administrators (collectively referred to in this Paragraph as the "Releasing Party,") does hereby fully and forever remise, release, and discharge each other <u>Party to this Agreement</u> and their respective predecessors, successors, assigns, heirs, executors, trustees, beneficiaries, officers, directors, shareholders, members, partners, limited partners, employees, <u>attorneys</u>, and administrators (collectively referred to in this paragraph as the "Discharged Parties"), of and from <u>any and all claims</u>, demands, agreements, contracts, covenants, <u>suits</u>, <u>actions</u>, <u>causes of action</u>, obligations, controversies, debts, costs, expenses, accounts, damages, judgments, losses, and liabilities, of whatever kind in nature, in law, equity, or otherwise, <u>whether known or unknown</u>, concealed or hidden, <u>against any of the Discharged Parties and their representatives</u>, the Releasing Party has had, may have had, <u>now has</u>, or hereafter can, shall, or may have, for or by reason of any matter, cause, or thing whatsoever which arises from any events, <u>collection activities</u>, or otherwise, <u>occurring prior to the execution of this Agreement</u>.

(Settlement Agreement, Ex. C to Def.'s Mot. For Summ. J. 2-3, Dkt. No. 15.) As part of the settlement, Amex agreed to waive more than $10,000 of the debt Ms. Harte owed and further agreed to allow Ms. Harte to make interest free payments on the remaining balance.

Ms. Harte asserts that she entered into the settlement agreement solely to resolve the state court action and that she did not agree to release her claim against Cannon because:

(1) the release between [Ms. Harte] and [Cannon] is unenforceable, as [Ms. Harte] did not expressly and unequivocally release her FDCPA claim against [Cannon];
(2) the release drafted by [Cannon] was ambiguous, as the contractual terms "attorneys" and "collection activities or otherwise" are purposefully vague, ambiguous, and must be construed against [Cannon]; and
(3) extrinsic evidence demonstrates that [Ms. Harte] did not intend to release [Cannon] from liability under the FDCPA in the present matter.


(Pl.'s Resp. to Def.'s Mot. for Summ. J. 2, Dkt. No. 16). Cannon disagrees and contends that the agreement released any and all claims and lawsuits, including Ms. Harte's suit against Cannon.

<div style="text-align:center">ANALYSIS</div>

### Standard of Review

The court grants summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court "view[s] the evidence and make[s] all reasonable inferences in the light most favorable to the nonmoving party." N. Natural Gas Co. v. Nash Oil & Gas, Inc., 526 F.3d 626, 629 (10th Cir. 2008).

### The Release[1] is Not Ambiguous

"Releases are contractual provisions and should be interpreted according to well-developed rules of contract interpretation. Peterson v. Coca-Cola USA, 2002 UT 42, ¶ 9, 48 P.3d 941 (quoting Ward v. Intermountain Farmers Ass'n, 907 P.2d 264, 267 (Utah 1995)). One of the first questions in contract interpretation is whether the contract is ambiguous. "A contractual term or provision is ambiguous if it is capable of more than one reasonable interpretation because of uncertain meanings of terms, missing terms, or other facial deficiencies." Giusti v. Sterling Wentworth Corp., 2009 UT 2, ¶ 44, 201 P.3d 966. If the writing is unambiguous, the intent of the parties is determined exclusively from the plain meaning of the contractual language. Bodell Const. Co. v. Robbins, 2009 UT 52, ¶ 19, 215 P.3d 933 (citing Giusti, 2009 UT 2, ¶ 44, 201 P.3d 966).

A court's ambiguity analysis includes two steps. First, "the district court should consider any 'relevant and credible extrinsic evidence offered to demonstrate that there is in fact an

---

[1] The settlement agreement dictates that it will be construed and governed by Utah law.

ambiguity'" in the terms of the contract  City of Grantsville v. Redevelopment Agency of Tooele City, 2010 UT 38, ¶ 31, 233 P.3d 461 (quoting Daines, 2008 UT 51, ¶ 31, 190 P.3d 1269).  In making this determination, "[t]he only evidence relevant . . . is evidence of facts known to the parties at the time they entered" into the agreement.  Id. (quoting Peterson, 2002 UT 43, ¶ 19, 48 P.3d 918).  The court may then make a finding that the agreement is ambiguous "'only if the competing interpretations' offered by the parties 'are reasonably supported by the language of the [agreement].'"  Id. (quoting Daines, 2008 UT 51, ¶ 31, 190 P.3d 1269).  If the plain language of the written instrument is clear and unambiguous, it is enforced as a matter of law.  Anderson v. Eby, 998 F.2d 858, 862 (10th Cir. 1993).  Second, if the court determines that the interpretations are reasonably supported by the language of the agreement, "then extrinsic evidence is admissible to clarify the ambiguous terms."  City of Grantsville, 2010 UT 38, ¶ 31, 233 P.3d 461 (quoting Peterson, 2002 UT 43, ¶ 19, 48 P.3d 918).

   Ms. Harte primarily argues that the terms "attorneys" and "collection activities" are ambiguous.  She claims that the term "attorneys" is ambiguous because it fails to identify Cannon by name and the term is buried at the end of a long list, which includes "predecessors, successors, assigns, heirs, executors, trustees, beneficiaries, officers, directors, shareholders, members, partners, limited partners, employees, attorneys, and administrators."  (Ex. C to Def.'s Mot. for Summ. J. 2-3, Dkt. No. 15.)  In Anderson v. Eby, the court disagreed with the plaintiff's similar argument, stating "[w]e cannot agree with [p]laintiff that the use of long series of legal terms, such as 'the undersigned, his spouse, legal representatives, heirs and assigns,' in and of themselves render the agreement unclear and ambiguous."  998 F.2d at 862.  "Rather, they merely show an intent to draft a broad and valid waiver agreement."  Id.

   Ms. Harte's affidavit containing her statements that she "did not understand the term 'attorneys' to refer specifically to Cannon" and that she "did not understand the term 'collection

4

activities or otherwise' to refer to [her] FDCPA lawsuit against [Cannon]" (Harte Aff. ¶¶ 5-6, Dkt. No. 16) does not clarify the terms. It merely shows that Ms. Harte was not fully aware of the agreement that she signed. Ms. Harte also certified that she fully understood the agreement, as the Representations and Warranties paragraph states, "[e]ach Party has carefully read this Agreement and understands this Agreement, and each part thereon." (Ex. C to Def.'s Mot. for Summ. J. 6, Dkt. No. 15.)

Accordingly, the court concludes that the language of the release is unambiguous.

<u>The Plain Meaning of the Release in the Agreement is to Discharge all Related Claims</u>

The agreement's recitals state that it would "resolve the Parties' disputes and the Lawsuit" and "dispose of all matters between them." (Ex. C to Def.'s Mot. for Summ. J. 2, Dkt. No. 15.) But the release paragraph in the agreement discharged other causes of action, by describing "suits . . . which arise[] from . . . collection activities." (Ex. C to Def.'s Mot. for Summ. J. 3, Dkt. No. 15.) The paragraph states:

> . . . of and from <u>any and all claims</u>,. . . <u>suits</u>, <u>actions</u>, <u>causes of action</u>, obligations, controversies,. . . and liabilities, of whatever kind in nature, in law, equity, or otherwise, <u>whether known or unknown</u>, concealed or hidden, <u>against any of the Discharged Parties and their representatives</u>, the Releasing Party has had, . . . <u>now has</u>, or hereafter can, shall, or may have, for or by reason of any matter, cause, or thing whatsoever which arises from any events, <u>collection activities, or otherwise</u>, <u>occurring prior to the execution of this Agreement</u>.

(<u>Id</u>.) While "collection activities" is broad, it is apparent that it includes this related lawsuit.

The FDCPA lawsuit was filed because of activities relating to the same debt that was the subject of the state court action. Perhaps the release could have been more specific by stating "collection activities related to the Amex debt," or something similar, but there is no evidence that Ms. Harte had other ongoing collection activities with Amex or other creditors.

Ms. Harte argues that if the release were meant to release her FDCPA claim against Cannon, it should have explicitly stated so. Because Cannon was aware of the FDCPA lawsuit

5

when the settlement agreement was written, Ms. Harte claims that the lawsuit should have been mentioned by name within the release. But Ms. Harte was also aware of the FDCPA lawsuit when she signed the release and she was fully represented by Columbia Law Center during the state court action. During the settlement negotiations, Ms. Harte and her counsel could have inquired whether the release would allow the FDCPA suit to continue. But she did not.

In her response, Ms. Harte points out that any uncertainty with respect to construction of a contract should be resolved in favor of the non-drafting party. See Sears v. Riemersma, 655 P.2d 1105, 1107 (Utah 1982). While this is true, the non-drafting party still bears the burden of showing how the language of the contract is ambiguous on its face by providing another reasonable interpretation before the court can look to extrinsic evidence to determine the intentions of the parties. Without another possible interpretation of the language, the court cannot take the next step of determining the parties' intent from extrinsic evidence, and construing the contract in Ms. Harte's favor.

Because the plain meaning of the release in the agreement was to discharge all related claims, the court concludes that Ms. Harte released her FDCPA claim against Cannon.

## ORDER

For the foregoing reasons, Cannon's Motion for Summary Judgment (Dkt. No. 15) is GRANTED.

SO ORDERED this 18th day of October, 2013.

BY THE COURT:

_____
TENA CAMPBELL
United States District Judge